We think the Circuit Court erred in granting the injunction.

REVERSED.

The B. & M. R. R. Co. v. CLINGMAN.

1. Public Lands: ASSIGNMENT OF WARRANT: CANCELLATION: FRAUD. G., being entitled to a land warrant for eighty acres, by mistake was given one for forty acres which he assigned to C., although by its terms it was not assignable, and subsequently entered the land in his own name, agreeing upon the issuance of the patent to convey to C.; the Commissioner of the Land Office afterwards canceled the entry and a warrant for eighty acres was issued to G. in lieu of the one first issued; the land entered under the first warrant was afterwards selected by the plaintiff under the Act of Congress, approved May 15, 1856, granting lands to aid in the construction of railways and the selection duly approved: *Held*,

    1. That the legal title to the land was in plaintiff.

    2. That any claim by G. to the land entered under the first warrant was a fraud upon the government.

    3. That since the assignment of the warrant was prohibited, the assig-

nee could acquire no equity in the land of which the government was bound to take notice.

4. That the assignment of the warrant was not legalized by the subsequent Act of March 22, 1852, authorizing such assignments.

*Appeal from Marion District Court.*

THURSDAY, JUNE 7.

ACTION for the recovery of forty acres of land. Defense in the nature of a cross petition in equity. Decree that defendant is the equitable owner, and plaintiff appeals. The facts necessary to an understanding of the case appear in the opinion.

*Anderson & Collins*, for appellant.

The United States can only be divested of its right and title to the public lands in the manner prescribed in the acts of Congress and the rules and regulations prescribed by the land department. (*Bagnell v. Broderick*, 13 Pet., 436; *Irwin v. Marshall*, 20 How., 66; *David v. Richabaugh*, 32 Iowa 543.) The fee remains in the government until patent issues, which carries the fee and confers the best title. (*Carman v. Johnson*, 20 Mo., 108; *Gibson v. Choteau*, 13 Wal., 92.) A grant of public lands passes the title as well as a patent, and to the same extent and with the same effect. (*Chorlefaux v. Duchesne*, 8 Wis., 287.) The title to a land warrant does not pass by delivery without assignment. (*Holland v. Hensley*, 4 Iowa, 222.) An innocent purchaser or grantee of a trustee will hold the estate discharged of the trust, although it be a constructive trust and made such by the fraud of the vendor. (2 Washb. on Real Prop., 3 ed. 478; *Gray v. Coan*, 40 Iowa, 327.) The title to public land is subject to inquiry by the government and to equities in its favor until the issuance of the patent, and the fact of having paid money in good faith to the enterer will not protect the holder from such equities. (*Miller v. Kerr*, 7 Wheat., 1; *Wilcox v. Jackson*, 13 Pet., 516; *Root v. Shields*, 1 Woolw., 340.) The cancellation of an entry by the Commissioner of the Land Office divests the title of his

grantee. (*Bellows v. Todd*, 34 Iowa, 30; *Johnson v. Towns-ley*, 13 Wal., 72; *Jourdan v. Barrett*, 4 How., 160.) Neither adverse possession, prescription, nor the statute of limitations runs against the government. (*Lindsey v. Miller*, 6 Pet., 666.)

*Stone & Ayres*, for appellee.

The rights of a purchaser of government land are protected as well under a certificate as under a patent, and with the issuance of the certificate the purchaser becomes invested with the substantial title in the land, which can only be taken from him by an appropriate legal proceeding. (*Arnold v. Grimes*, 2 Iowa, 1; *Ware v. Brush*, 1 McLean, 537; *Cavender v. Smith*, 3 G. Greene, 350; *Carroll v. Safford*, 3 How., 460.) When a land warrant has been issued it becomes an act binding upon the government which the commissioners are not authorized to set aside. (*Buell v. Stiles*, 35 Ill., 305; *Merrill v. Hartwell*, 11 Mich., 200.) If the register has duly admitted the location of land and granted a certificate thereof, a subsequent sale of the same land is void, although to a *bona fide* purchaser without notice. (*Mayer v. McCullough*, 1 Carter, 339.)

ROTHROCK, J.—The case was submitted to the court below on an agreed statement of facts, the substance of which is as follows:

The land in question was entered or located in the name of one Thomas Guyton, on the 27th day of December, 1851, with a military land warrant issued to said Guyton under the act of Congress approved September 28th, 1850, and a certificate of such entry or location was duly issued in the name of said Guyton.

On the 15th day of November, 1851, Guyton sold said land warrant to the defendant herein for forty dollars in cash. A written contract was then entered into between said parties by which it was agreed that the warrant should be entered in the name of Guyton, but that by reason of said sale the entry should be for the use of defendant Clingman. That said

Guyton should convey said real estate to defendant as soon as he should receive a patent therefor from the United States. No patent was ever issued to Guyton, or to the defendant. Both of said parties knew at the time of said sale that the sale was prohibited by law.

On the 20th day of February, 1852, the Commissioner of Pensions instructed the Commissioner of the General Land Office, that if no patent had been issued on said warrant the same should be forwarded to the office of the Commissioner of Pensions in order that a warrant of eighty acres might be issued in its stead.

On the 13th day of April, 1852, the forty acre warrant having been returned to the office of the Commissioner of Pensions as ordered, he canceled the same, and issued a warrant to the said Guyton for 80 acres.

On the 15th day of October, 1852, the Commissioner of the General Land Office canceled the said entry or location, made in the name of Guyton, and on the same day mailed a letter to the Register and Receiver of the local land office at Fairfield, advising them of such cancellation.

The said warrant for 80 acres was afterwards located in Wisconsin, and the land on which it was located was patented in the name of other parties.

On the 22nd day of June, 1852, Guyton, in pursuance of his said agreement and sale, conveyed the land in controversy to the defendant herein. No new consideration was paid. The consideration expressed was forty dollars, and was the same forty dollars paid for the warrant. The defendant, Clingman, had no actual, personal knowledge of the cancellation of the warrant, and the entry thereof, until about the year 1869 or 1870. The land always has been unimproved timber land, and the defendant has paid the taxes, excepting the tax for 1872, which was paid by plaintiff, and the defendant ever since the entry of the land has exercised such acts of ownership over it as is usual with persons owning such lands, cutting and carrying away timber, openly and publicly.

The plaintiff's right to said land is derived from the Act of Congress, approved June 2nd, 1864, entitled "An Act making

a grant of lands to the State of Iowa in alternate sections, to aid in the construction of certain railroads in said State, approved May 15th, 1856."

. It further appears that plaintiff built its road, selected and claimed said land, paid the necessary fees, and the proper certificates having been made, on the 3rd day of February, 1869, were duly approved by the Secretary of the Interior, whereby the said real estate was duly set over, and conveyed by the United States to the plaintiff, subject to the provisions and conditions contained in the said Act of Congress.

There was nothing in the book of original entries in the office of the Recorder of Monroe [Marion] county, Iowa, showing that the entry of the land in question had been canceled, until about the 29th day of July, 1870,

There is no question made in the argument, as to any right or interest of the defendant in the land in question, based upon adverse possession.

The legal title is in the plaintiff, and must prevail unless overcome by a superior equity in the defendant. It is con-

1. PUBLIC lands: assignment of warrant: cancellation: fraud.

ceded that both Clingman and Guyton knew at the time of the sale and purchase of the warrant, that such sale was prohibited by the act of Congress of September 28th, 1850. It further appears that Guyton was entitled to a warrant for eighty acres, instead of forty, and that the issuance of said forty acre warrant, instead of one for eighty acres, was by reason of some mistake, or oversight as to the rights of Guyton. The contract of sale or assignment of the warrant was prohibited by law, and no assignment of the certificate of entry or location was allowed. Indeed the certificate issued to Guyton expressly stated that " No assignment of this certificate will be regarded." It cannot be claimed that if there were no intervening rights of third persons, the Commissioner of Pensions could not have legally canceled the forty acre warrant, and issued one for eighty acres, and thus correct the mistake that had been made. In such case no one would claim that Guyton could acquire any rights based upon the forty acre warrant. We must presume that he knew that he was entitled to eighty acres, and not one hun-

dred and twenty, and any claim made by him based upon an entry or location of the forty acre warrant would be a fraud upon the government. We will now inquire what right, if any, did Clingman acquire against the government by reason of his contract with Guyton? It may be conceded that if Guyton had been content with the forty acre warrant, and the same had not been canceled, but a patent had issued on the location, and Guyton had thus been invested with the legal title, a conveyance thereof to Clingman would have been valid, or in case of refusal to convey, it might have been enforced. But this is not the case made by the record before us. As the assignment or sale of the warrant was prohibited by law, the officers of the land department had the right to assume, when the warrant was canceled, that no one had acquired any interest under it, and upon this assumption they had the undoubted right to deal with Guyton alone in correcting the mistake. Clingman then could acquire no equity as against the government, of which it was bound to take notice. The validity of his contract depended entirely on the good faith of Guyton.

As both parties in their arguments have insisted that the case in principle is the same as though the goverment were a private person, suppose that Guyton, being the holder of an agreement for purchase with a third person, which by its express terms is unassignable, makes a contract with Clingman to convey when he shall himself acquire title. No one would claim, if such third person, in ignorance of such contract, should, with the consent of Guyton, cancel the agreement for purchase, that Clingman could claim a specific performance. He would have a right of action against Guyton to recover back purchase money, but no claim whatever on the other person.

It seems to us that upon principle the case supposed is precisely like the one under consideration. It will be remembered that at the date of the conveyance from Guyton to Clingman the forty acre warrant had been canceled, and the eighty acre warrant issued. The argument of counsel for appellee as to the want of power in the officers of the land department to cancel warrants and entries, and the authorities

cited, seem to us to be based on an entirely different class of cases, and are upon the assumption that Clingman is a *bona fide* assignee, or grantee without notice. It may be that upon an ordinary entry of land the conveyance of the person making the entry is valid, and that a subsequent cancellation of the entry is void, and cannot affect the grantee who took his conveyance in good faith. It is not denied, however, that as between Guyton and the government the mistake could be corrected in the way it was, and we hold that Clingman had no such claim to the land, and could not have, as would prevent Guyton from, in effect, surrendering his forty acre warrant and taking one for eighty acres in its stead. This case is plainly distinguishable from the cases of *Cavender v. Smith,* 3 G. Greene, 349, and *Arnold v. Grimes,* 2 Iowa, 1. In the former case the question decided was that the certificate of entry in case of a purchaser of public lands created such a full and complete right to the land as that it might be sold at sheriff's sale and good title made as against the holder of the certificate. In the latter case Arnold held a certificate of purchase as a pre-emptioner. Chapman contested Arnold's pre-emption, and Arnold's certificate was canceled. Chapman claimed and proved up a pre-emption to the same land, received a certificate and afterwards a patent. Arnold still insisting on his right to the land, such proceedings were had that a patent was afterwards issued to him, reciting that Chapman's patent had been revoked and canceled, being illegal. The main question decided was that Arnold having obtained a patent, it attached to his original purchase, and his title was perfected, and that the Commissioner of the General Land Office had no power to cancel Arnold's certificate of entry.

It will be observed that Arnold was claiming his entry to be rightful, and it was finally so determined. In this case we hold that Guyton by accepting the eighty acre warrant, released all right under the one for forty acres, and was in effect a party to the cancellation, and that Clingman by virtue of a purchase prohibited by law was dependent for performance solely on the good faith of Guyton.

In the view we take of the case it is unnecessary to refer

further to the authorities cited by counsel, confident as we are that the principles above announced are not in conflict with any of them. And in our opinion the passage of the act of March 22, 1852, authorizing the assignment of warrants, does not aid the defendant. The warrant in question was canceled before that date, and Guyton had received the one for eighty acres in its stead. Guyton had surrendered all claim under the forty-acre warrant by his acceptance of another, and his act was binding on Clingman. The judgment of the District Court will be

REVERSED.